UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN COLTON,

        Plaintiff,                    CIVIL ACTION NO. 10-CV-13073

    vs.                                DISTRICT JUDGE GERALD E. ROSEN

DEBRA SCUTT, ZIVIT COHEN,      MAGISTRATE JUDGE MONA K. MAJZOUB
CONNIE IVES, BETH GARDON,
I. MARIE FLETCHER, TIMOTHY
KANGAS, JEFFREY STIEVE, LYNDA
ZELLER, JOHN DOE, RICHARD
HALLWORTH, and NANCY MARTIN,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** This Court recommends that the Motion to Dismiss filed by Defendants Ives, Scutt, Stieve, Zeller, Kangas, and Fletcher (docket no. 24) be **GRANTED**, the Motion to Dismiss filed by Defendants Hallworth and Cohen (docket no. 28) be **GRANTED IN PART**, the Motion for Summary Judgment filed by Defendant Martin (docket no. 43) be **GRANTED**, and the Motion for Summary Judgment filed by Defendant Gardon (docket no. 44) be **GRANTED**.

The Court further recommends that Defendants Ives, Scutt, Stieve, Zeller, Kangas, Fletcher, Hallworth, Martin, and Gardon be dismissed from this action. This matter should proceed against Defendant Cohen for deliberate indifference to Plaintiff's hernia condition.

**II.**    **REPORT**:

This matter comes before the Court on four motions. The first motion is the Motion to

1

Dismiss filed by Defendants Ives, Scutt, Stieve, Zeller, Kangas, and Fletcher. (Docket no. 24). Plaintiff filed a response to the motion. (Docket no. 35). The second motion is the Motion to Dismiss filed by Defendants Hallworth and Cohen. (Docket no. 28). Plaintiff filed a response. (Docket no. 37). Defendants filed a reply. (Docket no. 38). The third and fourth motions are the Motions for Summary Judgment filed by Defendants Martin and Gardon. (Docket nos. 43, 44). Plaintiff did not file responses to these motions and the time for responding has now expired. All pretrial matters have been referred to the undersigned for action. (Docket no. 46). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). These matters are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.    Facts**

Plaintiff filed this *pro se* civil rights action for damages and injunctive relief under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. (Docket no. 1). The events giving rise to Plaintiff's claims occurred while he was incarcerated at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. (Docket no. 1). Plaintiff sues JCF Warden Debra Scutt; (2) JCF Nurse Supervisor Connie Ives; (3) former JCF Health Unit Manager Beth (Gardon) Howell ("Defendant Gardon"); (4) Duane Waters Health Center Administrator Marie Fletcher; (5) MDOC Southern Region Health Administrator Dr. Timothy Kangas; (6) MDOC Chief Medical Officer Dr. Jeffrey Stieve; (7) MDOC Bureau of Health Care Administrator Lynda Zeller; (8) MDOC official Nancy Martin; (9) Richard Hallworth, CEO of American Service Group ("ASG"), the parent company of Prison Health Services, Inc. ("PHS"); and (10) PHS employee Dr. Zivit Cohen.

Plaintiff avers that he was transferred to JCF on April 24, 2009 with the preexisting conditions of atrial flutter and atrial fibrillation, acute myeloid leukemia, hernia, and gastrointestinal problems and cysts. (Docket no. 1, ¶¶ 13-15, 17). Plaintiff alleges that he received medical care at the Karmanos Cancer Institute at the Detroit Medical Center until April 2009 when his regimen was terminated because his system could not handle additional treatments. (Docket no. 1, ¶ 16). He alleges that shortly after he was transferred to JCF, he was seen by a physician's assistant who continued his medications and confirmed all of his special accommodations. (Docket no. 1, ¶¶ 17-18). Plaintiff claims that he received cardiac monitoring from Duane Waters Hospital in May 2009 with normal results. (Docket no. 1, ¶ 19). In June 2009 Plaintiff was seen by his oncologist at Karmanos Cancer Institute where his blood was drawn and it was determined that there was no need for additional treatment. (Docket no. 1, ¶¶ 20).

Plaintiff contends that he was seen by a registered nurse for an intake procedure in June 2009, he was seen by a doctor in July 2009 who did not perform a physical examination, and he was seen for his annual health care screening in September 2009. (Docket no. 1, ¶¶ 21-23). Plaintiff alleges that he filed a grievance on September 22, 2009 because he had not been seen by his oncologist or by a doctor at JCF. (Docket no. 1, ¶ 24). Plaintiff alleges that he was seen by Defendant Cohen on October 2, 2009. During this visit a physician's assistant informed Defendant Cohen that Plaintiff's cancer records had not been requested and that she would have the records faxed from Karmanos. (Docket no. 1, ¶ 25).

Plaintiff avers that he saw Defendant Cohen again on October 6, 2009 at which time the doctor informed Plaintiff that he did not need to see a cardiologist because she was going to make a recommendation for him to wear a heart monitor. (Docket no. 1, ¶ 26). Plaintiff contends that

3

Defendant Cohen agreed to submit a request for him to see his oncologist. (Docket no. 1, ¶ 27). He contends that when he informed Defendant Cohen that he experienced daily pain from his hernia, she did not perform a physical examination and said that his hernia-related complaints would have to wait until his other medical issues were resolved. (Docket no.1, ¶ 28).

Plaintiff alleges that he submitted a health care request on January 4, 2010 inquiring into why it was taking so long to be seen and explaining that his medication was about to run out. (Docket no.1, ¶ 30). On January 14, 2010 he filed a grievance complaining that he was not receiving proper medical care and his heart medication was running out. (Docket no. 1, ¶¶ 31). Plaintiff claims that he was called to health care and given his medications on January 29, 2010. (Docket no. 1, ¶ 33).

Plaintiff alleges that during an April 15, 2010 appointment with Defendant Cohen, the doctor could not answer questions concerning his medical condition, such as whether Plaintiff had chromosomal or genetic abnormalities, whether Plaintiff "had a loss of part of my 5th or 7th chromosome," or whether Plaintiff "had a mutation in the FLT-3 gene." (Docket no. 1, ¶¶ 38-43). Plaintiff contends that Defendant Cohen agreed to schedule Plaintiff to see the cardiologist and once again failed to examine him related to his hernia pain. (Docket no. 1, ¶ 45-47). Plaintiff avers that a scheduled follow-up visit with Defendant Cohen was cancelled. He claims that he sent a kite to health care on June 22, 2010 requesting to be seen and that he never received a response.

Plaintiff avers that Defendant Scutt was the Warden of JCF and as such knew or should have known of the violations being committed by health care. (Docket no. 1, ¶ 64).

He alleges that Defendants Kangas, Zeller, Stieve, and Fletcher sat on the Medical Service Advisory Committee and knew or should have known of the failures of the health care system but took little or no action. (Docket no. 1, ¶ 68).

4

Plaintiff alleges that Defendant Hallworth signed a contract as President and CEO of PHS to ensure that Plaintiff would receive adequate health care but failed to do so. (Docket no. 1, ¶¶ 12, 69).

He alleges that Defendant Gardon was aware of serious problems with the grievance process, scheduling and kite problems, and electronic medical system and took little or no action to fix them. (Docket no. 1, ¶ 66).

Plaintiff alleges that Defendant Cohen was deliberately indifferent to his serious medical needs. (Docket no. 1, ¶ 65).

Finally, Plaintiff alleges that Defendants Ives and Martin[1] failed to provide Plaintiff with a meaningful hearing in violation of his due process rights. (Docket no. 1, ¶¶ 4, 67).

**B.      Proposed Amended Complaint**

Plaintiff filed a motion to amend the complaint which is pending before this Court. (Docket no. 31). Like the original complaint, the proposed amended complaint alleges that Defendants Scutt, Kangas, Stieve, Zeller, Fletcher, Hallworth, Gardon, and Cohen were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The proposed amended complaint also alleges that Defendants Ives and Martin failed to give him a meaningful hearing in violation of his due process rights.

The proposed amended complaint, like the original complaint, alleges that Defendant Scutt knew or should have known of the health care violations; Defendant Gardon knew of the problems with the grievance process, scheduling and kite problems, and electronic medical system and took

---

[1] Defendant Martin was identified as John Doe in the original complaint. (Docket nos. 1, 27).

no action to fix them; Defendants Kangas, Stieve, Zeller, and Fletcher sat on the Medical Advisory Committee and knew or should have known of the health care failures but took no action to correct them; Defendant Hallworth as President and CEO signed a contract with the MDOC to ensure that Plaintiff received adequate health care but failed to do so; Defendant Cohen was deliberately indifferent to Plaintiff's serious medical needs; and Defendants Ives and Martin were responsible for responding to grievances and failed to provide Plaintiff with a meaningful hearing in violation of his due process rights. (Docket no. 31).

**C.     Standard**

Defendants Ives, Scutt, Stieve, Zeller, Kangas, Fletcher, Hallworth, and Cohen move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a complaint. When determining a motion under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pled factual allegations as true, and determine whether the plaintiff's allegations present plausible claims. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). To survive a Rule 12(b)(6) motion to dismiss the complaint's " '[f]actual allegations must be enough to raise a right to relief above the speculative level;' they must 'state a claim to relief that is plausible on its face.' " *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 570 (2007)).

Defendants Gardon and Martin move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**D.     Analysis**

**1.     Individual Capacity Claims Against Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin**

Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin argue that they are entitled to dismissal on the basis of qualified immunity. (Docket nos. 24, 43). Government officials performing discretionary acts enjoy qualified immunity from suit under § 1983 for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). To establish liability under 42 U.S.C. § 1983, the Plaintiff must allege that a right secured by the Constitution or a federal law was violated by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). Plaintiff alleges that his Eighth Amendment right was violated by the deliberate indifference of Defendants Scutt, Stieve, Zeller, Kangas, and Fletcher. He also alleges that his right to due process was violated by Defendants Ives and Martin.

In order to state a claim for monetary damages under § 1983, Plaintiff must allege some specific personal wrongdoing on the part of each individual Defendant. Section 1983 liability may not be predicated upon theories of vicarious liability or respondeat superior. *See Shehee v. Luttrell*,

199 F.3d 295, 300 (6th Cir.1999). Furthermore, claims of supervisory liability will suffice only if the plaintiff alleges and shows that the supervisor personally engaged in or otherwise "authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Id*. (liability of supervisory personnel must be based on more than the mere right to control employees). Where a defendant's only involvement in the alleged unconstitutional conduct is the denial of administrative grievances or the failure to act, the defendant cannot be held liable under § 1983. *Id*.

Defendants Scutt, Stieve, Zeller, Kangas, and Fletcher were sued because of their respective positions of authority and supervisory responsibilities within MDOC. Defendants Ives and Martin were sued based on their roles of responding to Plaintiff's grievances. The complaint does not contain allegations of personal wrongdoing on the part of these Defendants for purposes of § 1983 liability. Plaintiff's proposed amended complaint does not remedy this error. Accordingly, Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin are entitled to dismissal of Plaintiff's individual capacity claims on the basis of qualified immunity.

**2. Official Capacity Claims Against Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin**

Plaintiff also asserts claims against Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin in their official capacities. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir.2003) (citations omitted). The Eleventh Amendment bars civil rights actions against a state and its departments unless the state has waived its immunity and consented to suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The State of Michigan has not consented to § 1983 civil rights lawsuits filed in federal court. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir.2004).

A state's sovereign immunity may be abrogated for the purpose of ending a continuing

violation of federal law. *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir.2002). Thus, Plaintiff can avoid the sovereign immunity bar by suing for injunctive or declaratory relief rather than monetary damages. *Johnson v. Unknown Dellatifa,* 357 F.3d at 545 n.1 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). To prevail on a claim for injunctive relief the movant must allege and show that (1) there is a strong likelihood of success on the merits; (2) he will suffer irreparable injury without the injunction; (3) the issuance of the injunction will not cause substantial harm to others; and (4) the public interest will be served by issuance of the injunction. *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir.1989).

To the extent Plaintiff sues Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin for money damages, his official capacity claims are barred by the Eleventh Amendment. In addition to monetary damages, however, Plaintiff also seeks declaratory and injunctive relief. (Docket nos. 1, 31). Plaintiff has not alleged facts to show that these Defendants knew of Plaintiff's specific issues and actively violated his constitutional rights. Consequently, he has not alleged facts to show that he has a strong likelihood of success on his claims against these Defendants. Accordingly, Plaintiff's official capacity claims against Defendants Scutt, Ives, Stieve, Zeller, Kangas, Fletcher, and Martin for declaratory and injunctive relief should be dismissed.

**3.    Individual and Official Capacity Claims Against Defendant Gardon**

Defendant Gardon argues that she is entitled to dismissal of Plaintiff's claims because Plaintiff failed to properly exhaust his administrative remedies against her. (Docket no. 44). In support of her argument Defendant Gardon submitted a copy of the relevant MDOC grievance procedure and a copy of Grievance No. JCF 10-01-0199-12D1. (Docket no. 44, exs. A-B). MDOC Policy Directive 03.02.130(R) provides that a grievance must contain the dates, times, places, and

names of all those involved in the issue. (Docket no. 44, ex. A - Policy Directive 03.02.130(R)). A grievance may be rejected under the applicable MDOC guidelines if it is untimely filed. (Docket no. 44, ex. A - Policy Directive 03.02.130(G)(4)).

Grievance No. JCF 10-01-0199-12D1 shows that the grievance was rejected at Steps I and III because it was not filed in a timely manner. (Docket no. 44, ex. B). However, even if the grievance had been timely filed, it does not exhaust Plaintiff's administrative remedies because it does not identify Defendant Gardon by name. Plaintiff did not respond to Defendant Gardon's motion and therefore has not demonstrated that he submitted any other grievance by which he may have exhausted his administrative remedies against this Defendant. Grievance No. JCF 10-01-0199-12D1 fails to comport with the MDOC grievance policy and does not exhaust Plaintiff's claims against Defendant Gardon. Accordingly, Defendant Gardon should be dismissed from this action.

Even if the Court were to conclude that Plaintiff properly exhausted his administrative remedies against Defendant Gardon, Plaintiff has failed to allege facts or provide evidence to show that Defendant Gardon was personally involved in or implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct. The proposed amended complaint does not rectify this problem. Therefore, for the reasons stated in the preceding sections, Defendant Gardon is also entitled to qualified immunity and dismissal of Plaintiff's individual and official capacity claims.

**4.     Claims Against Defendant Hallworth**

Plaintiff alleges that Defendant Hallworth signed a contract as President and CEO of PHS to ensure that Plaintiff would receive adequate health care but failed to do so. (Docket no. 1, ¶¶ 12, 69). The complaint and proposed amended complaint fail to allege facts to show that Defendant Hallworth engaged in active unconstitutional behavior, or otherwise authorized, approved, or

knowingly acquiesced in the alleged unconstitutional conduct. Additionally, construing Plaintiff's complaint liberally, he has not alleged facts to show that Defendant Hallworth as President and CEO of PHS executed any unconstitutional policy, practice, or custom that caused Plaintiff's harm. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Accordingly, Plaintiff has failed to state a plausible claim for relief against Defendant Hallworth.

**5.     Claims Against Defendant Cohen**

Plaintiff sues Defendant Cohen based on her "absolute inability to schedule appointments, schedule testing, follow up on orders given, prescribe potentially deadly medication, read patient's complete files, understand when you need to ask a professional for advice, and adhere to policies and procedures of the MDOC and applicable laws." (Docket no. 1, ¶ 65). The allegations in Plaintiff's complaint and proposed amended complaint demonstrate that Plaintiff received frequent and regular medical attention. Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976). Therefore, Plaintiff's allegations do not state a claim of widespread deliberate indifference by Defendant Cohen.

Nonetheless, Plaintiff alleges that he informed Defendant Cohen on at least two occasions that he was in pain almost daily from his hernia, that the pain bothered him at times when he urinated, and that despite his complaints Defendant Cohen ignored his concerns and failed to examine his hernia. These claims are sufficient to state an Eighth Amendment claim of deliberate indifference against Defendant Cohen. For that reason, the Court recommends that Defendants Hallworth and Cohen's Motion to Dismiss (docket no. 28) be denied with respect to Defendant

Cohen.  This action should proceed against Defendant Cohen on Plaintiff's claim that she was deliberately indifferent to his medical needs in relation to his hernia condition.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: 6/20/11                    s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

    I hereby certify that a copy of this Report and Recommendation was served upon John Colton and Counsel of Record on this date.


Dated: June 20, 2011        s/ Lisa C. Bartlett
                                    Case Manager